UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| YOLANDA BROOKS,<br><br>          Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | Case No. 20-13246<br>Honorable Terrence G. Berg<br>Magistrate Judge Elizabeth A. Stafford |

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 14, 15]

Plaintiff Yolanda Brooks appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied her application for supplemental security income (SSI) under the Social Security Act.  Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B).  After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion, ECF No. 15, be **GRANTED**;

- Brooks' motion, ECF No. 14, be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## I.   Background

### A. Brooks' Background and Applications

Born in April 1968, Brooks was 51 years old when she applied for SSI in April 2019,[1] with an alleged disability onset date of July 21, 2018.  ECF No. 11, PageID.55, 57, 66.  She had past relevant work as a "assembler, small products."  *Id*., PageID.65.  Brooks claimed disability from degenerative disc disease, osteoarthritis of the bilateral knees, small airway obstructive lung disease, hypertension, migraine headaches, carpal tunnel syndrome, obesity, rheumatoid arthritis, chronic pain all over, shortness of breath, heart blockage, numbness on left side of her body, lumbar spasms, chronic degenerative disc, bulging disc L5-S1, blurred vision, and a mass in her breast.  *Id*., PageID.61, 139.

Brooks' 2019 application was not her first request for disability benefits; ALJ Andrew G. Sloss denied her application for SSI in July 2018 after he found that Brooks had severe impairments of degenerative disc

---

[1] The ALJ's decision and the "Disability Determination Explanation" state that her application date was April 17, 2019.  ECF No. 11, PageID.55, 139.  But the application summary for SSI states she applied on May 13, 2019.  *Id*., PageID.222

disease, osteoarthritis, and chronic headaches but was not disabled.  *Id.*, PageID.125-133.

For the current application, after a hearing, during which Brooks and a vocational expert (VE) testified, the ALJ found Brooks not disabled.  *Id.*, PageID.55-67, 73-106.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  *Id.*, PageID.52-54. Brooks timely filed for judicial review.  ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 416.920(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).

months, no disability will be found.  *Id.*  Third, if the claimant's severe

impairments meet or equal the criteria of an impairment set forth in the

Commissioner's Listing of Impairments, the claimant will be found disabled.

*Id.*  If the fourth step is reached, the Commissioner considers its

assessment of the claimant's residual functional capacity (RFC), and will

find the claimant not disabled if he or she can still do past relevant work.

*Id.*  At the final step, the Commissioner reviews the claimant's RFC, age,

education, and work experiences, and determines whether the claimant

could adjust to other work.  *Id.*  The claimant bears the burden of proof

throughout the first four steps, but the burden shifts to the Commissioner if

the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14

F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Brooks was not

disabled.  At the first step, he found that Brooks had not engaged in

substantial gainful activity since the alleged onset date of April 17, 2019.

ECF No. 11, PageID.57.  At the second step, he found that Brooks had the

severe impairments of degenerative disc disease, osteoarthritis of the

bilateral knees, small airway obstructive lung disease, hypertension,

migraine headaches, carpal tunnel syndrome, and obesity.  *Id.*, PageID.58.

Next, the ALJ concluded that none of Brooks' impairments, either alone or

4

in combination, met or medically equaled the severity of a listed

impairment.  *Id.*, PageID.59-60.

Between the third and fourth steps, the ALJ found that Brooks had

the RFC to perform light work, except

> she can lift and carry 10 pounds frequently and 20 pounds
> occasionally; stand or walk for 6 hours in an 8-hour workday; sit
> for 6 hours in an 8-hour workday; push or pull within the
> aforementioned weight restrictions; occasionally climb ramps or
> stairs, balance, stoop, kneel, or crouch; never crawl or climb
> ladders, ropes, or scaffolds; never reach overhead with the left
> upper extremity; occasionally have exposure to extreme cold,
> extreme heat, vibration, or atmospheric conditions such as
> dust, noxious odors, fumes, or other respiratory irritants;
> perform work in a moderate noise intensity level environment
> with no lighting brighter than an office environment; never have
> exposure to unprotected heights or moving mechanical parts;
> and frequently handle with the bilateral upper extremities.

*Id.*, PageID.61.  At step four, the ALJ found that Brooks cannot perform any

past relevant work as an "assembler, small products."  *Id.*, PageID.65.  At

the final step, after considering Brooks' age, education, work experience,

RFC, and the testimony of the VE, the ALJ found that there were jobs in

significant numbers that Brooks could perform, including positions as

marker, sorter, and mail clerk.  *Id.*, PageID.66-67.

## II.    Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and conformed with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Brooks asserts that the ALJ erred by not evaluating the effects of her carpal tunnel syndrome (CTS) in the RFC assessment and by not including CTS-related limitations in the hypothetical to the VE.  ECF No. 14, PageID.912-913.  Thus, Brooks argues, the VE's testimony and ALJ's

6

findings based on the testimony "lacked substantial evidence."  *Id.*,

PageID.913.  The Court disagrees.

**B.**

The Court rejects Brooks' challenge to the ALJ's finding that she

could perform a reduced range of light work, limiting Brooks to "frequently

handle with the bilateral upper extremities."  ECF No. 11, PageID.61.

Brooks makes a meritless assertion that the ALJ failed to discuss her

"use of wrist braces and allegations of wrist pain and weakness."  ECF No.

14, PageID.914.  Citing an EMG study from December 2015, the ALJ noted

that Brooks was diagnosed with bilateral carpal tunnel syndrome, with the

left greater than the right, and sensory, demyelinating, axonal, and mild in

severity.  ECF No. 11, PageID.63, 314.  The ALJ also discussed Brooks'

"complain[ts] of numbness, tingling, pain, and weakness in her bilateral

hands," and her testimony that her carpal tunnel syndrome "makes it

difficult for her to hold heavy objects or open anything with her hands,

although it is worse on the left."  *Id.*, PageID.62-63, 89.

But the ALJ found that Brooks' allegations of the intensity,

persistence, and limiting effects of her carpal tunnel syndrome were "not

fully consistent with the medical evidence of record."  *Id.*, PageID.63.  He

reasoned the conservative measures, including wrist braces, vitamin B6,

7

Vitamin D, and trigger point injections controlled her symptoms.  *Id.*, PageID.63, 323, 879.

Brooks may disagree with the ALJ's description of the treatment as "conservative," but the ALJ relied on her doctor's opinion: "Will continue with *conservative* treatment of her carpal tunnel syndrome. Trigger point injections…hand braces with B6 vitamin…Vitamin D."  *Id.*, PageID.879 (emphasis added).  The ALJ also observed the lack of a medical recommendation for surgery, which supported the finding that Brooks' symptoms were controlled by the conservative treatment.  *Id.*, PageID.63. The ALJ was permitted to consider Brooks' conservative treatment. *Stephens v. Astrue*, 839 F. Supp. 2d 939, 951 (S.D. Ohio 2012) (a claimant's receipt of no more than conservative treatment contradicts disabling pain).

Pointing to a June 2019 surgery on her wrist, Brooks claims that the ALJ falsely found that no surgery for her CTS was recommended.  ECF No. 14, PageID.917-918.  That argument is unsupported.  The 2019 surgery was to remove a ganglion cyst on her left wrist.  ECF No. 11, PageID.473-475.  It is true that a neurological follow-up visit referred to the surgery as "recent left carpal tunnel surgery."  *Id.*, PageID.880.  But the surgical notes clarify that the procedure performed was "[e]xcision of left wrist ganglion

8

cyst," with no mention of carpal tunnel.  *Id.*, PageID.471-479.  Thus, the ALJ did not err in finding no recommendation for Brooks to undergo carpal tunnel release surgery.

Brooks' argument that the RFC lacks manipulative limitations is meritless too.  ECF No. 14, PageID.915-916.  In crafting the RFC, the ALJ relied on the 2019 opinion of state agency medical consultant, David Mika, D.O., to conclude that Brooks did not require manipulative limitations to accommodate her carpal tunnel.  ECF No. 11, PageID.64.  Dr. Mika found that Brooks was limited in reaching overhead but that she could perform light work and could handle, finger, and feel without limitation.  *Id.*, PageID.143, 145-148.  The ALJ found Dr. Mika's opinion consistent with the medical records about Brooks' carpal tunnel syndrome, which was well controlled with conservative treatment.  *Id.*, PageID.64 (citing PageID.303-333, 334-341, 342-360, 361-379, 383-441, 442-444, 445-599, 726-838, 839-856, 857-874, 875-881).

Even so, because of Brooks' continued symptoms while wearing wrist braces, the ALJ restricted Brooks to frequent handling with the bilateral upper extremities, which was more restrictive than Dr. Mika's recommendation.  *Compare* ECF No. 11, PageID.147 *with id.*, PageID.63-65.  Courts in this circuit have routinely found RFC assessments that are

more restrictive than the opinion evidence to be supported by substantial evidence.  *See, e.g.*, *Drinkwine v. Comm'r of Soc. Sec.*, 18-12327, 2019 WL 4866144, at *3 (E.D. Mich. Aug. 8, 2019), *adopted*, 2019 WL 4626674 (E.D. Mich. Sept. 24, 2019); *Chess v. Berryhill*, 2019 WL 845986, at *7 (E.D. Tenn. Jan. 3, 2019).

In making his RFC assessment, the ALJ also relied on Brooks' normal muscle strength and tone, and the fact that no edema or deformities were found during extremity inspections.  ECF No. 11, PageID.63, 341, 403, 735, 859-864, 867-869, 879.  And the ALJ noted that Brooks' function report said that "she is able to live independently, prepare simple meals, perform her daily grooming independently, and grocery shop in stores."  *Id.*, PageID.63, 224-227.

In sum, substantial evidence supports the ALJ's RFC findings, so it must be held.  *Gentry*, 741 F.3d at 722.  That is so even if the evidence that Brooks cites might support a different RFC.  *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported

by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.") (citations omitted).

## C.

The VE identified many jobs in the economy that a person with Brooks' assessed RFC could perform.  ECF No. 11, PageID.95-96,102. Brooks complains that the hypothetical the VE relied on "did not accurately convey [Brooks's] limitations."  ECF No. 14, PageID.913.  But as noted, the ALJ's RFC findings were supported with substantial evidence.  And the ALJ "properly relied on the VE's response to a hypothetical question that was based on the limitations that were credited by the ALJ and supported by substantial evidence on the record."  *Walton v. Comm'r of Soc. Sec.*, 60 F. App'x 603, 611 (6th Cir. 2003).

## III.   Conclusion

The Court **RECOMMENDS** that the Commissioner's motion, ECF No. 15, be **GRANTED**; that Brooks' motion, ECF No. 14, be **DENIED**; and that the ALJ's decision be **AFFIRMED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: May 23, 2022

11

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

12

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 23, 2022.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager

13